## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| **v.** | **Case No.: 20-CR-237-JFH** |
| **CARL GENE ORTNER, JR.** | |
| *Defendant.* | |

## GOVERNMENT'S AMENDED TRIAL BRIEF

COMES NOW the United States of America, by and through Clinton J. Johnson, Acting United States Attorney, and Ryan M. Roberts and Shannon B. Cozzoni, Assistant United States Attorneys, and respectfully submits its brief for trial in the above-styled case.

## STATUS OF THE CASE

A.    A jury trial is currently set for May 17, 2021, at 9:30 a.m. before the Honorable John F. Heil, III.

B.    Estimated time for trial (including jury selection) is 3 days.

C.    The defendant is in custody.

D.    Trial by jury has not been waived.

E.    The Government expects to call approximately 12 witnesses.

F.    An interpreter is not needed.

G    The Government will introduce approximately 40 exhibits to include pictures of American and golden eagle parts; permit application to

possess American and golden eagle parts; lab report; land records, certifications from various federally recognized tribes of non-membership of defendant, S.W.'s tribal membership card, written notes and statements by defendant, and messages between S.W. and defendant.

H.    The Government has proposed stipulations as to Indian Country; the Indian status of the victim; defendant's non-membership in federally recognized tribes; and that defendant has not applied for a permit for eagle parts. The Defendant has elected not to stipulate.

I.    The defendant has not given the Government notice of any affirmative defense.  The defendant has not provided the Government with any discovery.

## FACTUAL OVERVIEW

The facts and exhibits in this case will show that Ortner used lies, gifts of illegal Eagle feathers, and threats to manipulate a teenage girl to have sex with him. Ortner's deceit didn't stop with the victim. He posed as a Native American spiritual healer who promised the victim's family that he would assist in her grief from the sudden loss of her sister to a car accident, and duped their entire tribe into believing he was someone who could be trusted so he could sexually assault one of their young members – and this wasn't the first time.

## The Bald Eagle

Bald eagles are the national symbol of the United States and they are widely considered sacred by American Indians. Federal law limits possession of eagle feathers and other parts to enrolled members of federally recognized tribes who use them in religious practices.  Bald eagles once nearly disappeared from most of the

United States but flourished under federal protections and came off the endangered list in 2007.  Hunting them generally remains illegal. The USFWS operates the National Eagle Repository to provide Native Americans with eagle carcasses, parts, and feathers. Native Americans can also inherit them within their families or receive them as gifts.  Typically, eagle feathers are kept within families and extended families for generations.

There is a high demand for eagle parts such as wings, head, feet, and feathers. They are often illegally sold on the black market, where a single eagle feather can be worth $500. Tail feathers are often specifically sought after and names such as "black tip" (immature golden eagle), "speckled" (immature bald eagle), "whites" (mature bald eagle) and "striped" (mature golden eagle) are used to identify tail feathers of eagles.  The feathers of golden and bald eagles are sacred to American Indians as symbols of God and the values the people hold toward nature and humanity.  The demand and use of eagle parts greatly lies with Native Americans, who fashion them into regalia or they are used in other cultural and religious practices.

**Report of Sexual Assault**

On April 27, 2018 there was a report made at the Wyandotte High School that alleged a juvenile student, Sara Wright ("S.W."), had been having sexual relations with an adult male identified as Carl Gene Ortner. The following day, Ottawa County Sheriff's Department Detective Leslie Bissell met with S.W. at the

Wyandotte Nation Tribal Complex.  S.W. advised she had been having sexual relations with Ortner for approximately one year. Ortner claimed to be a Native American spiritual counselor and healer. Ortner informed S.W.'s mother and father that he could help the family spiritually.  S.W.'s parents, Rebecca and John Wright informed Detective Bissell that Ortner became close to S.W. after the death of Wright's older daughter (Rachel). Ortner informed the Wright's to focus on themselves and to let him help S.W. grieve for Rachel.

In the spring of 2016, Ortner gave S.W. eagle feathers, which was very symbolic to their Native American culture, and after this the sexual abuse began occurring.  S.W. advised the first time she had sex with Ortner she was 15 years of age and it was around Thanksgiving in November 2017.  S.W. reported she did not want to have sex with Ortner.  S.W. said she had sex with Ortner because he put pressure on her and represented himself as a spiritual healer. S.W. elaborated the sexual contact was unwanted but Ortner told her she must do it because she had been instructed to do so by her elder (Ortner) and that she must always respect her elders.  Most of these events took place on state jurisdiction; however, the following events took place on Indian Country:

1.     November of 2017 [age 15] – Bearskin Center, touching inner thigh and vagina over and under the clothing.

2.     In January of 2017, Ortner took S.W. to Joplin, MO to his office and had sex with her.

**Ortner – Posing as Native American**

Ortner was generally known in the community as a Native American elder. He told Rebecca Wright that he was Cherokee and John Wright that he was Pawnee. Multiple law enforcement groups queried databases for tribal enrollment and determined Ortner was not listed as a member of any federally recognized tribe. Both the Cherokee and Pawnee tribes show no enrollment for Ortner.

**Grooming and Sexual Assault of S.W.**

Ortner first made himself known to the Wright's in 2015. In 2016, he gifted an eagle plume and drop set to S.W. Plumes are often gifted to women who have done something honorable or for a specific event. A gifted plume is considered a high honor when received from an elder. A drop set means a group of feathers from a single bird, usually tail or primary wing feathers, and these feathers are used as a fan or other regalia. The Wright's interacted with Ortner again in 2016, when Ortner made the comment to them that, "It's time she [S.W.] had some big girl feathers". The Wright's had seen Ortner at several tribal events around Ottawa County and at powwows in Ottawa County.  Ortner had his own drum and he had his own large Oklahoma fancy bustle full of eagle feathers.  The Wright's thought Ortner was, by all accounts, a respected "Native man."

Ortner gifted a mature bald eagle plume set with matching drop feathers to S.W. approximately 2016, because she was, "a good fancy shawl dancer" and he wanted to "help encourage her to keep up with her culture." This was seen as a very

Page **5** of **16**

great honor to S.W., due to what the eagle feather means and its place in the Native American culture. Ortner gained the trust of the Wright family and S.W. through these gifts since Ortner pretended to be a mentor and elder. Unfortunately, the eagle feathers given to S.W. were buried as part of a healing ceremony after the sexual assault was discovered.

During November 2017, Ortner took S.W. with him to a residence in Oswego to "help cleanse a woman's house" by using eagle feathers and cedar.  Ortner presented himself as a Native elder to S.W. and gave her eagle feathers and let her be around all the eagle feathers and parts he possessed. S.W. was confused and depressed but everyone thought it was due to the grief from the death of S.W.'s sister. Ortner had S.W. afraid of "evil spirits" and gave her a "smudging eagle feather" in December 2017 to "ward off the spirits he was keeping away from her" and also to "tell her sister to go away for a while because her spirit was making her [S.W.] too sad".

Ortner not only fooled her family but tribal leaders as well.  Many other Native people in the area accepted Ortner and thought he was what he said he was. No one was aware of Ortner's history or tactics towards S.W. S.W. was named Wyandotte Princess, and featured in advertising:



S.W. disclosed the abuse in April 2018. She stated Ortner was using her grief and more importantly, her Native belief and spirituality, against her.  Ortner "guilted" her on many occasions throughout the months he sexually assaulted and abused her.  Ortner made statements such as, "haven't your parents been through enough", "if you ever tell, I will deny it like I have done before" and "if I go down, I will take you down and the tribe with me." Furthermore, Ortner kept a handgun by S.W.'s ankle on occasions when he assaulted her in the car and made sure she knew he had guns in his home to threaten her.

**Eagle feathers and other migratory birds discovered**

Ortner's niece and S.W. both stated Ortner had eagle parts at his residence, specifically eagle feathers in the attic and a whole eagle carcass in the freezer. A subsequent federal search warrant executed on Ortner's residence on August 14, 2018, revealed a large cache of Bald Eagle, Golden Eagle, and numerous other bird feathers, talons, and heads.

**Permits**

On July 24, 2018, a check of the USFWS Service Permit Issuance and Tracking System (SPITS) database was negative for any listing for Ortner as a permittee for eagle feathers or other migratory bird feathers.  A check of the USFWS Law Enforcement Management and Information System (LEMIS) database was also negative for permits to possess migratory birds. Dennis Wiist, National Eagle Repository, conducted further searches and did not find any documents or files indicating Ortner had applied for eagle carcasses or parts.

## OFFENSES ALLEGED IN THE INDICTMENT

**COUNT 1:** 18 U.S.C. § 2423(a) – Transportation with Intent to Engage in Criminal Sexual Activity

First:      Defendant knowingly transported a person in interstate commerce;

Second:   At the time of the transportation, that person was less than 18 years of age; and

Third:     At the time of the transport, Defendant intended that the person would engage in unlawful sexual activity for which someone could be charged with a crime.

**COUNT 2:** 18 U.S.C. §§ 1151,1152, and  1153, 2243(a) – Sexual Abuse of a Child in Indian

Country

First:        The defendant knowingly engaged in a sexual act with S,W.;

Second:    The defendant is a an Indian or a non-Indian person;

Third:      S.W. is an Indian person;

Fourth:    At the time of the act, S.W. was at least 12 but under the age of 16;

Fifth:       At the time of the act, S.W. was at least four years younger than defendant; and

Sixth:      The acts occurred within Indian country.

The term "sexual act" means:

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with the intent to abuse, humiliate, harass, degrade the person, or to arouse or gratify the sexual desire of the defendant or any other person.

(D) an intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years, with the intent to abuse, humiliate, harass, degrade the person, or to arouse or gratify the sexual desire of the defendant or any other person.

**COUNT 3:** 18 U.S.C. §§ 1151, 1152,1153, and 2244(b)(3) – Abusive Sexual Conduct in Indian Country

First:      The defendant knowingly engaged in sexual contact with S.W.;

Second:     The defendant is an Indian or a non-Indian person;

Third:      S.W. is an Indian person;  and

Fourth:     The acts occurred within Indian country.

The term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks, with the intent to abuse, humiliate, harass, degrade the person, or to arouse or gratify the sexual desire of the defendant or any other person.

**COUNTS 4 and 5:** 16 U.S.C. §668(a) – Possession of Parts of a Bald or Golden
                                                Eagle

First: The defendant, knowingly or with wanton disregard for the consequences of his act;

Second: Did take, possess, sell, purchase, barter, offer to sell, purchase or barter, transport, export or import, at any time or in any manner;

Third: Any bald eagle commonly known as the American eagle, or any golden eagle, alive or dead, or any part, nest or egg thereof of the foregoing eagles; and

Fourth: Defendant did not have a permit.

## PROPOSED WITNESSES AND
## TIME OF DIRECT EXAMINATION

The Government expects to call the following witnesses in its case-in-chief.  The anticipated time for the direct examination and a summary of the expected testimony

is provided for each witness.  *Note:* This is not an exhaustive list of potential witnesses in the case, but merely the witnesses the Government believes may be necessary.

**1.    Rhonda Pugh (15 minutes)**

Ms. Pugh will testify that she is a school counselor and learned of a high school student having sex with an adult in 2018.

**2.    S.W. (2 hours)**
      **Victim**
This witness will testify as to all details as set forth above and in the 413 notices filed in this matter.

**3.    John Tracy Wright (one hour)**
      **Victim's father**

This witness (or witnesses) will testify to the circumstances surrounding the death of their oldest daughter and the effect it had on S.W. They will explain the representations Ortner made to them concerning his heritage and credentials.

**4.    Mariah Tiner (30 minutes)**

This witness will testify that she was a client of Ortner's and purchased Native American regalia from him. She stated that after he was charged in state court he told her that he wasn't worried because they would have to "prove she was under 16 when they had sex," and he had someone destroy any evidence on the phones." Ortner gave her notes about the criminal case.

**5. Sherrie Clemmons (10 minutes)**

This witness will testify that she is the tribal heritage director of the Wyandotte tribe. She knew Ortner from pow wow's and that he made and sold Native American regalia from him. Sometime after he was charged in state court Ortner told her, "If I go down, the tribe will go down too."

**6.  D.F. (1 hour)**

This witness is a former victim of Ortner's and will testify how he treated her and sexually assaulted her in a manner consistent with S.W.

7.    **A.O. (1 hour)**

This witness is another former victim of Ortner's and will testify how he treated her and sexually assaulted her in a manner consistent with S.W. and D.F.

8. **Christen Lee, Wyandotte Nation, Planning and Natural Resources Director (10 minutes)**

Ms. Lee will testify to the Indian Land status of the Wyandotte Nation Complex including the Bearskin Wellness Center and the Turtle Stop convenience store.

9. **U.S. Fish and Wildlife Service/Office of Law Enforcement (USFWS/OLE) Special Agent (SA) Matthew Bryant (30 minutes)**

This witness will testify regarding his training and experience and all facts and circumstances surrounding his investigation of the defendant's case.

10. **Elisa Dahlberg or Department of Interior Representative (15 minutes)**

She works with the National Eagle Repository, and conducted searches and did not find any documents or files indicating Ortner had applied for eagle carcasses or parts.

11. **U.S. Fish and Wildlife Service Forensic Scientist Ariel Gaffney (1 hour)**

She will testify to the identity of the feathers and other animal parts located in Ortner's residence.

12. **FBI Special Agent (SA) Matthew Hewett (30 minutes)**

This witness will testify regarding his training and experience and all facts and circumstances surrounding his investigation of the defendant's case.

## LEGAL AND EVIDENTIARY ISSUES

### Defenses, Defense Evidence, and Discovery

Defense counsel has not informed the Government that it intends to offer an affirmative defense and no discovery has been provided.

### Stipulations

None

### Pre-admission of Exhibits

The Government will request a conference with defense counsel regarding the pre-admission of the Government's Exhibits.

### Rule of Sequestration

The Government requests the Court instruct the witnesses for both the Government and the Defense to comply with Rule 615 of the Federal Rules of Evidence.  The Government will request that FBI Special Agent Matthew Hewett and/or USFWS Special Agent Matthew Bryant  be allowed to sit at counsel table as the case agent.

### Evidentiary Matters

None anticipated.

### Jurisdiction

The defendant does not wish to stipulate that the Bearskin Wellness center and the Turtle Stop convenience store are located within the Wyandotte Nation complex

which is land held by the United States in trust for the benefit of the Wyandotte

Nation, therefore the jurisdictional issue is before this court.

It is well-established that, as a matter of law, a district court determines the

existence of federal jurisdiction over the geographic area, and "then leaves to the jury

the factual determination of whether the alleged crime occurred at the site." *United

States v. Roberts*, 185 F.3d 1125, 1139 (10th Cir. 1999) (citing *United States v.

Hernandez–Fundora*, 58 F.3d 802, 812 (2d Cir. 1995) (district court, not the jury,

found federal jurisdiction for a federal prison); *United States v. Warren*, 984 F.2d 325,

327 (9th Cir. 1993) (district court found federal jurisdiction for a military base)). The

Tenth Circuit, in its Tenth Circuit Pattern Criminal Jury Instructions, confirms this

approach. *See, e.g.*, 10th Cir. Pattern Jury Instructions, 2.54.1 (2018) ("You are

instructed that the alleged involuntary manslaughter occurred within the

[territorial][special maritime] jurisdiction of the United States, if you find beyond a

reasonable doubt that such offense occurred in the location described in the

indictment.").

A court's power to make a jurisdictional determination includes whether the

land is Indian Country as defined by 18 U.S.C. § 1151. *United States v. Antonio*, 936

F.3d 1117, 1125 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 818 (2020); *Roberts*, 185 F.3d

at 1139; *United States v. Deon*, 656 F.2d 354 (8th Cir. 1981). For instance, in *United

States v. Roberts*, the Tenth Circuit rejected the defendant's argument that the

determination of whether the site of the crime was within Indian Country was a

question for the jury, not the district court. 185 F.3d at 139. The Tenth Circuit held, "[T]he district court can find, as a matter of law, a geographic area or particular location is Indian Country, and then instruct the jury to determine factually whether the offense occurred there." *Id.* at 1140.

In fact, several circuits have stated, in dicta, that it is improper for the jury to determine whether a particular tract of land or geographic area is Indian Country. *Id.* at 1140; *see also United States v. Stands*, 105 F.3d 1565 (8th Cir. 1997) (noting that because the determination of whether an area is Indian Country is a matter of law for the court, "[i]t may have been error" for the court to submit the question to the jury); *United States v. Levesque*, 681 F.2d 75 (1st Cir. 1982) (same).

The United States has proposed a jury instruction finding that the Wyandotte Nation Complex is Indian Country and after the appropriate testimony, asks this court to instruct the jury as such.

## CONCLUSION

The Government respectfully submits this Trial Brief in an attempt to anticipate the factual and legal issues which may arise at trial.  The Government requests that the Court grant it leave to submit additional briefing should subsequent issues be identified.

Respectfully submitted,

CLINTON J. JOHNSON
Acting United States Attorney


*/s/      Ryan M. Roberts*
Ryan M. Roberts, OBA No. 16433
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

## CERTIFICATE OF SERVICE

I, hereby certify that on this 7th day of May 2021, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Fred Randolph Lynn
Attorney for Defendant


*/s/ Ryan M. Roberts*
Ryan M. Roberts